UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERMAN ANTONIO VASQUEZ,<br><br>  Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>  Defendant. | Case No. 13-cv-01921-MEJ<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 11, 16 |

## INTRODUCTION

Plaintiff German Antonio Vasquez ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 11, 16. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' papers, the administrative record ("AR") in this case, and relevant legal authority, the Court hereby GRANTS/DENIES Plaintiff's Motion and GRANTS/DENIES Defendant's cross-motion for summary judgment for the reasons set forth below.

## BACKGROUND

Plaintiff is 42 years old. (AR 152.) He moved to the United States when he was 16 and earned a 12th grade education. (AR 51, 186.) He has the ability to speak and understand English, but not read or write. (AR 51, 184.) Plaintiff previously worked as a delivery driver for a wine company, during which time he sustained a work-related injury to his right shoulder on January 10, 2008. (AR 187, 274.) He last worked on March 3, 2008. (AR 185.)

On June 20, 2008, Plaintiff underwent right shoulder arthroscopic superior labral repair

1   surgery for his right shoulder, performed by William Workman, M.D.  (AR 342, 345.)  Despite the

2   surgery, he continued to have persistent right shoulder pain and began to see Robert A. Gomez,

3   M.D., a shoulder specialist.  (AR 381-82.)  Dr. Gomez initially examined Plaintiff on September

4   10, 2008, noting the following impression: "right shoulder impingement syndrome, biceps

5   tendinitis and AC arthropathy status post a SLAP repair."  (AR 381.)  Dr. Gomez provided steroid

6   injections that resulted in 40% pain relief and an improvement in Plaintiff's range of motion.  (AR

7   381.)

8         On subsequent visits, Dr. Gomez noted that the pain had not subsided and determined that

9   a second surgery was necessary.  (AR 380.)  Plaintiff subsequently underwent a second right

10  shoulder surgery on November 7, 2008.  (AR 379.)  Plaintiff continued to see Dr. Gomez regularly

11  for follow-up visits and complained of ongoing severe pain and difficulty raising his arm.  (AR

12  368-78.)  Due to complaints of ongoing severe pain and difficulty raising his arm, Plaintiff

13  underwent a third surgery on March 6, 2009 (arthroscopic foreign body removal).  (AR 374, 390.)

14        After an examination on June 10, 2009, Dr. Gomez noted that Plaintiff was still having

15  significant pain and limited range of motion.  (AR 372.)  Dr. Gomez felt that he was not a surgical

16  candidate for any other procedures.  (AR 372, 388.)  He released him to return to light duty work

17  with restrictions of no lifting over ten pounds with the right upper extremity and no over shoulder

18  reaching with the right upper extremity.  (AR 372, 388.)  On a subsequent visit on August 5, 2009,

19  Dr. Gomez noted that Plaintiff's employer terminated him because they were unable to

20  accommodate the light duty restrictions.  (AR 387.)  Dr. Gomez opined, "I don't see him going

21  back to his old job," but that "retraining is probably appropriate."  (AR 387.)

22        On September 21, 2009, Plaintiff underwent a Qualified Medical Evaluation by Ronald

23  Wolfson, M.D.  (AR 293-305.)  Dr. Wolfson noted Plaintiff's complaints of ongoing pain, and

24  limitation of motion and weakness in his right shoulder.  (AR 295.)  His examination revealed

25  tenderness, both anterior and posterior, to the right shoulder; significant weakness in his right hand

26  grip strength; weakness in shoulder abduction and flexion strength; and loss of range of motion in

27  all ranges.  (AR 299.)  Dr. Wolfson noted that range of motion in Plaintiff's elbows, forearms,

28

2

wrists, and hands was within normal limits, and examination of his neck and upper extremities revealed normal cervical lordosis. (AR 299.) He recommended physical therapy and possibly pain management. (AR 300-01.) Dr. Wolfson opined that Plaintiff's home exercise program was not adequate and that more could be done to allow him to have functional improvement. (AR 300.) He concluded that "[t]here will be permanent disability in this case." (AR 301.)

Dr. Gomez agreed with Dr. Wolfson's recommendation and referred Plaintiff to physical therapy for range of motion and strengthening. (AR 385.) Although Plaintiff complained that the physical therapy made his pain worse at a visit on February 1, 2010, Dr. Gomez recommended that Plaintiff continue the therapy for at least three months. (AR 383.)

On February 15, 2010, Dr. Wolfson completed a Qualified Medical Re-Evaluation. (AR 273-83.) Plaintiff reported insignificant improvement since his last evaluation. (AR 275.) Dr. Wolfson noted motor strength dramatically reduced on the right, but that Plaintiff continued to have full range of motion of his neck, and range of motion of the elbows, forearms, wrists, and hands was within normal limits. (AR 277.) Dr. Wolfson did not have any suggestions for additional surgery, but felt that Plaintiff may need surgery in the future. (AR 278.)

On June 14, 2010, S. Amon, M.D., completed a Physical Residual Functional Capacity Assessment. (AR 432-36.) Dr. Amon opined that Plaintiff could perform a range of light exertional work activities with only occasional ladders/ropes/scaffolds, kneeling, crouching, and crawling; and limited reaching in all directions. (AR 433-34.) Dr. Amon also opined that Plaintiff could not reach overhead with the right upper extremity and only occasionally reach overhead with the left upper extremity. (AR 434.)

On August 17, 2010, Plaintiff met with orthopedic surgeon Tom R. Norris, M.D. (AR 483-85.) In his evaluation, Dr. Norris notes, "There are absolutely no medical records whatsoever available to review." (AR 484.) The physical examination revealed decreased forward flexion, abduction, and external rotation of the right shoulder compared to the left. (AR 484.) Dr. Norris noted that the exam documented forward flexion of 110/165 degrees comparing the right to left side, abduction of 70/135 degrees, and external rotation of 65/70 degrees at the side. (AR 484.)

3

Plaintiff reached his hand to the top of his head bilaterally and overhead on the left side. (AR 484.) Dr. Norris noted no external rotation lag or hornblower sign. (AR 484.) Dr. Norris further noted that muscles of the left upper extremity appeared to be normal by testing, and muscles of the right shoulder appeared to be intact, but pain precluded his ability to give power greater than movement against gravity. (AR 484.) Plaintiff also had pain over the mid-clavicle, all parts of the proximal humerus, and rotation of the neck to the right or left side caused pain without specific localizing signs. (AR 484.) Dr. Norris indicated that the diffuse areas of pain, non-anantomic distribution of the Tinel sign to his finger in tapping in multiple areas and the ability to examine him with give way weakness in all motor groups of the upper extremity made it difficult to come up with an accurate diagnosis. (AR 484.)

On October 26, 2010, K. Wahl, M.D., completed a Physical Residual Functional Capacity Assessment. (AR 446-51.) Dr. Wahl opined that Plaintiff could perform a range of light exertional work activities, lifting a maximum of 10 pounds, only occasional pushing and pulling with the right upper extremity, occasional climbing of ramps/stairs, no climbing ladders/ropes/scaffolds, and all other postural frequently. (AR 447-48.) He also opined that Plaintiff could not reach above shoulder level with the right upper extremity. (AR 448.)

Plaintiff also continued evaluations with Dr. Gomez who, on November 17, 2010, noted that Plaintiff continued to have significant right shoulder pain and that "[f]rustration on both our parts about his persistent pain was discussed extensively." (AR 466.) On April 20, 2011, he noted that Plaintiff had pain with forward flexion and internal rotation with tenderness over the coracoid, indicating coracoid impingement, a relatively rare condition. (AR 466.) At a subsequent visit, Dr. Gomez injected the right shoulder at the coracoid, which provided about 40% pain relief for about two weeks, after which the pain recurred. (AR 470.) Dr. Gomez stated that this confirmed the diagnosis of coracoid impingement and recommended Plaintiff undergo a right shoulder coracoplasty. (AR 470.) Plaintiff told Dr. Gomez that he wanted to think about the surgery option for another week, so Dr. Gomez scheduled an evaluation for the following week. (AR 470.) Plaintiff did not show up for the appointment. (AR 469.) He called Dr. Gomez's office on August

4

18, 2011, to inform him that he changed his primary treating physician. (AR 469.)

Plaintiff began seeing J. Theodore Schwartz, Jr., M.D. in August 2011. (AR 504.) Dr. Schwartz noted restricted range of motion of the right shoulder, positive impingement sign, positive adduction sign, and tenderness to palpitation over the anterior and lateral aspects of the right shoulder. (AR 512.) After an examination on November 23, 2011, Dr. Schwartz opined that surgery would not predictably improve his symptoms. (AR 497.) He also noted increased pain in Plaintiff's left shoulder, which appeared to be from favoring his right. (AR 497.) He recommended an MRI scan of the left shoulder and placed Plaintiff on temporary disability until January 15, 2012. (AR 497.)

On December 28, 2011, Dr. Schwartz completed a Physical Medical Source Statement. (AR 516-19.) In that statement, Dr. Schwartz provided a diagnosis of bilateral shoulder pain and chronic neck pain with a guarded prognosis. (AR 516.) He described Plaintiff's pain as moderate to severe at times, radiating down the right arm. (AR 516.) He opined that Plaintiff had significant limitations with reaching, handling, or fingering. (AR 518.) He also provided the following limitations: never lift 10 pounds or more and could lift less than 10 pounds rarely; never climb stairs or ladders, but could twist, stoop, and crouch/squat frequently; Plaintiff was incapable of tolerating even low stress work; and Plaintiff would need to be absent from work more than four days per month as a result of his impairments. (AR 518-19.) Dr. Schwartz noted no limitations for Plaintiff to walk, sit, or stand. (AR 517.)

Dr. Schwartz examined Plaintiff again in February of 2012. (AR 524-25.) He reviewed Plaintiff's MRI, which showed evidence of mild AC joint arthrosis and supraspinatus tendinosis of the left shoulder. (AR 524.) His examination showed 80% normal range of motion of the cervical spine, right shoulder flexion and abduction to 90 degrees, normal range of motion of both elbows, forward flexion of the left shoulder to 150 degrees abduction to 140 degrees. (AR 524.) Dr. Schwartz opined that surgery would not predictably improve Plaintiff's right shoulder symptoms and found that the overall prognosis for returning to his previous position was quite guarded. (AR 524.)

5

On May 12, 2010, Plaintiff completed an Exertion Questionnaire. (AR 193-95.) Plaintiff stated that he was unable to lift more than 10 pounds, and that reliance on his left hand to carry most things was resulting in pain. (AR 193-94.) He indicated that although he tries to walk for about 10 minutes, it puts him in pain. (AR 193.) He also stated that he does not climb stairs, is unable to drive more than one hour without being in pain, and is unable to do the chores and yard work he used to do because he has trouble with everything that requires him to move his arm. (AR 194-95.) Plaintiff stated, "It is very difficult to live a normal life. I cannot do much without being in pain. If I overdue [sic] it, I pay for it at night." (AR 195.)

## SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On March 15, 2010, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on March 3, 2008. (AR 152.) The Social Security Administration initially denied Plaintiff's claim on June 19, 2010, finding that he did not qualify for disability benefits. (AR 18.) Plaintiff subsequently filed a request for reconsideration, which was also denied. (AR 18.) On May 11, 2011, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 96.) ALJ Richard Laverdure conducted a hearing on January 10, 2012. (AR 44-79.) Plaintiff appeared at the hearing with his attorney, Dennis Thornton, and the ALJ heard testimony from Plaintiff and Vocational Expert Thomas Linvill. (AR 44.)

### A.   Plaintiff's Testimony

Plaintiff testified that the three surgeries had not helped his right shoulder and that his condition had worsened. (AR 49-50.) When asked what problems he currently had with his shoulder, he stated that the "whole arm together" had sharp pain "all the time." (AR 51.) He rated the pain as 8 on a scale of 0 to 10. (AR 52.) Plaintiff testified that he took hydrocodone and another medication, and although they eliminated the pain a little bit, the sharp pain remained in his shoulder. (AR 52-53.) In addition to the pain medication, he also ices his shoulder three times a day, which causes him to relax and "feel good." (AR 53, 64.)

Plaintiff testified that his doctor limited his ability to lift. (AR 53.) He stated that he can lift up to 10 pounds with his right arm, but he is afraid he will drop something because he loses

6

1    sensitivity in his right hand. (AR 54.) Plaintiff also testified that he had started to have pain in his

2    left shoulder as well because he used it for everything, including carrying his daughter. (AR 55.)

3    He described the pain in his left shoulder as a 5, and that the pain comes and goes. (AR 56.)

4          Plaintiff further testified that he slept only four hours per night, which affects his

5    concentration and caused him to gain 50 pounds. (AR 58, 59.) As to activities of daily living, he

6    taught himself to shave with his left hand instead of his right, and he uses his left hand to wash his

7    hair. (AR 61.) He testified that he has a lot of pain putting on his socks and shoes, and that the

8    shoulder pain limited sexual activity with his wife. (AR 62.)

9          Plaintiff described his typical day as follows: get up about 7:30 a.m.; make breakfast for

10   his son; make breakfast for his daughter at 9:00 a.m.; make lunch for both kids; wash dishes; and

11   fold clothes. (AR 63.) He testified that his wife does most of the cleaning because it is too hard

12   for him. (AR 64.) He sits down or lies down on the sofa to rest most of the day. (AR 65.) He

13   stated that he could stay in one position for about 25 minutes. (AR 65.)

14   **B.  Vocational Expert's Testimony**

15         At the hearing, the ALJ posed the following hypothetical to the vocational expert:

> Now, assuming the capacity for work with the following limitations. Lifting and carrying at most ten pounds frequently or occasionally, sitting up to six hours a day, standing and walking up to six hours a day. No ladders, ropes, scaffolds. Ramps and stairs and balancing can be frequent. Crouch, crawl, stoop, kneel and crawl are limited to occasional. With the left upper extremity, the non-dominant, overhead reaching is limited to occasional, and with the dominant right, no overhead reaching and pushing and pulling are limited to occasional, and only up to the ten pound limit.

21   (AR 68.) Based on this hypothetical, the ALJ and vocational expert agreed that Plaintiff could not

22   perform any of his past relevant work. (AR 68-69.)

23         When asked whether there are any other jobs at the unskilled level that fit the hypothetical,

24   the vocational expert provided three: Booth Cashier (Cashier II), DOT 211.462-010, with 400,000

25   positions nationally and 7,000 in the local economy, but with only 25 percent of these jobs fitting

26   the hypothetical; Parking Lot Attendant, DOT 915.473-010, with 12,000 jobs nationally and 300

27   in the local economy; and Usher or Ticket Taker, DOT 344.677-014, with 8,500 jobs nationally

7

1    and 250 in the local economy.  (AR 70-72.)

2         Upon examination by Plaintiff's attorney, the vocational expert testified that a limitation for no reaching in front of the body, such as that opined by Dr. Schwartz, would eliminate all of the suggested jobs.  (AR 75.)  The expert also testified that, if Plaintiff needed to be absent more than four days per month for treatment as Dr. Schwartz indicated, that would also preclude him from these occupations.  (AR 75.)

**C.**     **The ALJ's Findings**

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[1]  20 C.F.R. § 404.1520(a).  The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled."  *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).  During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work."  *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(i), (b).  Here, the ALJ determined that Plaintiff had not performed substantial gainful activity since March 3, 2008.  (AR 20.)

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act.  20 C.F.R. § 404.1520(a)(4)(ii).  If no severe impairment is found, the claimant is not disabled.  20 C.F.R. § 404.1520(c).  Here, the ALJ determined that Plaintiff had the following severe

---

[1] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d) (1)(A).

8

impairments: degenerative disc disease; right shoulder impingement status post three surgeries; left shoulder overuse syndrome; and obesity. (AR 20.)

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpart. P, Appendix. 1. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or equals the listed impairments. (AR 20.)

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are non-severe. 20 C.F.R. § 404.1545(e). Here, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the ability to stand and walk six hours out of an eight-hour workday; sit for six hours of an eight-hour workday; lift/carry 10 pounds maximum; no ladders/ropes/scaffolds; frequent climbing of ramps and stairs; frequent balancing; occasional posturals; no overhead reaching with the right upper extremity; occasional pushing and pulling up to 10 pounds with the right upper extremity; and only occasional overhead reaching with the left upper extremity. (AR 21.)

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. § 404.1520(a)(iv)(4), (f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4) (iv). Here, Plaintiff has past relevant work as a delivery driver, a plumber, and a

9

street sweeper.  (AR 187.)  The ALJ determined that Plaintiff is unable to perform any past relevant work.  (AR 24.)

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g); 404.1560(c).  The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.  *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).  Here, based on the testimony of the vocational expert, Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including Booth Cashier, Parking Lot Attendant, and Usher/Ticket Taker.  (AR 25.)

### D.     ALJ's Decision and Plaintiff's Appeal

On February 23, 2012, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled.  (AR 15-26.)  This decision became final when the Appeals Council declined to review it on February 28, 2013.  (AR 4-12.)  Having exhausted his administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  On December 23, 2013, Plaintiff filed his motion for summary judgment.  (Dkt. No. 11.)  On March 20, 2014, the Commissioner filed a cross-motion for summary judgment.  (Dkt. No. 16.)  Plaintiff filed his Reply on April 3, 2014.  (Dkt. No. 17.)

## LEGAL STANDARD

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g).  The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards."  *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted).  "Substantial evidence" means more than a scintilla, but less than a preponderance, of evidence that a reasonable person might accept as adequate to support a conclusion.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).  The court must consider the administrative record as a whole, "weighing both the

10

evidence that supports and detracts from the ALJ's conclusion." *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (citation omitted). But, where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citation omitted). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*(citation omitted).

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

In his Motion, Plaintiff raises two issues: (1) whether the ALJ erred in rejecting the opinion of his treating physician; and (2) whether the ALJ erred in his assessment of Plaintiff's credibility. The Court shall consider each in turn.

### A.   Treating Physician Opinion

In his decision, the ALJ afforded no weight to the opinion of Dr. Schwartz, finding that his notes "appear to focus more on the claimant's subjective factors of complaints of pain and tenderness to palpitation rather than objective findings." (AR 24.) He also found that Dr. Schwartz's notes did not support his opinion that Plaintiff could not climb stairs or use his bilateral upper extremities at all for reaching in front or overhead, or that he had problems grasping, twisting, or using his fingers for fine manipulation. (AR 24.) The ALJ instead followed the opinion of the State agency medical consultant, Dr. Wahl, finding it "most consistent with the evidence of record that show that the claimant does have significant upper extremity limitations but is not precluded from all work." (AR 24.)

11

Plaintiff argues that the ALJ erred in giving no weight to Dr. Schwartz's opinion because his report discusses the evolving problems Plaintiff has with his upper left extremity, which Dr. Wahl's report does not address. Pl.'s Mot. at 10. Plaintiff notes that Dr. Wahl's report was issued on October 10, 2010, whereas Dr. Schwartz's reports covers August 2011 through February 2012, and that the ALJ should have considered the most recent medical reports as highly probative in his decision. *Id.* Plaintiff maintains that, although the ALJ finds fault with Dr. Schwartz's opinion that he could not climb stairs, Dr. Wahl similarly found a restriction from climbing stairs, limiting Plaintiff to occasional. *Id.* at 11. Finally, Plaintiff argues that the ALJ's assertion that Dr. Schwartz appears to focus on subjective factors of pain rather than objective findings is belied by Dr. Schwartz's reports. *Id.* Plaintiff notes that Dr. Schwartz conducted a thorough physical examination of the upper extremities at all of his examinations, including range of motion and provocative testing, and also obtained an MRI, which confirmed evidence of joint arthrosis and supraspinal tendinosis of the left shoulder. *Id.*

In response, the Commissioner argues that the ALJ properly rejected Dr. Schwartz's opinion because it contradicted his own examination notes. Def.'s Mot. at 2. Specifically, the Commissioner argues that Dr. Schwartz's examination notes contradicted his December 2011 medical source statement because they suggested that Plaintiff could use his arms to reach in front of him and overhead, use his hands and fingers for manipulation, and climb stairs. *Id.* The Commissioner further argues that the ALJ properly determined that Dr. Schwartz's opinion was not supported by the objective medical evidence, because the evidence showed that Plaintiff could use his right shoulder to some extent, his left shoulder, his hands and fingers to manipulate objects, and walk up stairs. *Id.* at 4. Finally, the Commissioner argues that the ALJ properly favored the opinion of State agency medical consultant Dr. Wahl over Dr. Schwartz because it was the most consistent with the evidence of record that show the claimant does have significant upper extremity limitations but is not precluded from all work. *Id.*

1. <u>Legal Standard</u>

When determining whether a claimant is disabled, the ALJ must consider each medical

opinion in the record together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *Zamora v. Astrue*, 2010 WL 3814179, at *3 (N.D. Cal. Sept. 27, 2010). In deciding how much weight to give to any medical opinion, the ALJ considers the extent to which the medical source presents relevant evidence to support the opinion. 20 C.F.R. § 416.927(c). Generally, more weight will be given to an opinion that is supported by medical signs and laboratory findings, and the degree to which the opinion provides supporting explanations and is consistent with the record as a whole. *Id.*

In conjunction with the relevant regulations, the Ninth Circuit has developed standards that guide the analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527). Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527). If a claimant has a treatment relationship with a provider, and that provider's opinion is supported by clinical evidence and not inconsistent with the record, the provider will be given controlling weight. 20 C.F.R. § 416.927(c)(2). "The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

A treating physician's opinion "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). If a treating physician's opinion is uncontradicted, an ALJ must give "clear and convincing" reasons that are supported by substantial evidence to reject the opinion. *Lester*, 81 F.3d at 830-31. If the treating physician's opinion is contradicted, an ALJ needs to only give "specific and legitimate reasons that are supported by substantial evidence in the record" to reject

13

the opinion. *Id.* The opinions of a specialist about medical issues related to his or her area of specialization are given more weight than the opinions of a non-specialist. 20 C.F.R. § 404.1527(c)(5) and 416.927(c)(5). "The ALJ is responsible for determining credibility and resolving conflicts" or ambiguities in the medical evidence. *Magallanes*, 881 F.2d at 750.

### 2. Application to the Case at Bar

Here, there is no dispute that Dr. Schwartz is Plaintiff's treating physician. Accordingly, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record" to reject his opinion. *Lester*, 81 F.3d at 830-31.

The ALJ determined that Dr. Schwartz's treatment notes did not support his disability opinion. (AR 24.) Plaintiff contends that the ALJ should have adopted Dr. Schwartz's opinion in a medical source statement dated December 28, 2011, where he opined the following about Plaintiff's abilities: no assessed limitations with respect to sitting, standing, or walking; no assessed need for breaks during the workday; should rarely lift/carry less than 10 pounds; should frequently twist, stoop, crouch, or squat; never climb stairs or ladders; could not use either arm to reach in front of his body or overhead; could only use both hands for 10% of an 8-hour work-day (48 minutes) to grasp, turn, and twist objects and for fine finger manipulations; incapable of low stress work; and would miss more than 4 days of work per month. (AR 516-19.)

The ALJ correctly noted that Dr. Schwartz's examination notes contradicted his December 2011 medical source statement because they suggested that Plaintiff could use his arms to reach in front of him and overhead, use his hands and fingers for manipulation, and climb stairs. (AR 24.) At the hearing, the ALJ cited Dr. Schwartz's August 2011 report as an example. (AR 76-78.) Regarding Plaintiff's right side of the body, the August 2011 report noted that Plaintiff could forward flex, abduct, and rotate his shoulder; demonstrated normal range of motion at the elbow; had no nerve irritation (negative Tinel's sign) at the elbow and wrist; and had intact sensation to light touch in his fingers; and no evidence of atrophy. (AR 512.) Regarding Plaintiff's left side of the body, the report noted the same, except that Plaintiff had greater range of motion in his left shoulder. (AR 512.) On December 30, 2011 – two days after providing his

14

medical source statement – Dr. Schwartz provided another report that reiterated the findings in his August 2011 report, but also noted left shoulder pain from favoring the right. (AR 520-22.) Dr. Schwarz also completed a supplemental progress report, dated February 16, 2012, which essentially mirrors the August and December 2011 reports, showing that Plaintiff's condition remained the same and did not deteriorate. (AR 524.) Given the objective findings in these reports, it is unclear how Dr. Schwartz determined that Plaintiff could not reach in front of him and overhead, and the reports do not explain his opinion that Plaintiff cannot use his hands and fingers for fine manipulation when they had intact sensation to light touch, no nerve irritation in the wrist, and no signs of atrophy.

Although Dr. Schwartz opined that Plaintiff could not climb stairs, his notes state that Plaintiff had 80% normal range of motion of the cervical spine, with no tenderness to palpation in numerous locations, and he noted that radiographs showed no significant evidence of disc space narrowing or disease. (AR 512-13.) Based on the record before it, the Court finds that the ALJ properly concluded that Dr. Schwartz's opinion is inconsistent with his objective findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040-41 (9th Cir. 2008) (holding ALJ properly rejected treating physician's questionnaire because it contradicted his own medical records); *see also* 20 C.F.R. § 404.1527(d)(4).

The ALJ also determined that Dr. Schwartz's opinion was not supported by the objective medical evidence. (AR 24.) The Court finds that the record supports this determination. February 2008 notes from Dr. Gunderson noted that x-rays of Plaintiff's shoulder were negative and that Plaintiff was tolerating modified work. (AR 239.) In September 2009, Dr. Wolfson evaluated Plaintiff and noted normal range of motion in his elbows, forearms, wrists, hands, thumbs, and fingers. (AR 299.) In June 2009, Plaintiff's other treating physician, Dr. Gomez, indicated that he could go back to light duty with no lifting over 10 pounds with the right upper extremity, no over shoulder reaching with the right upper extremity, and did not assess any manipulative limitations or left shoulder/arm limitations. (AR 372.) In August 2010, Plaintiff met with evaluating orthopedic surgeon Dr. Norris, who noted that the muscles of the left upper

15

extremity appeared normal and muscles of the right shoulder appeared intact "but pain precluded his ability to give power greater than movement against gravity." (AR 444.) State agency medical consultant Dr. Amon reviewed the medical evidence on June 14, 2010, and opined that Plaintiff could perform a range of light exertional work with some postural limitations, and no hand manipulation limitations. (AR 432-36.) As such, the Court finds that the ALJ properly discredited Dr. Schwarz's opinion. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding ALJ may discredit treating physician's opinion that is unsupported by objective medical findings); 20 C.F.R § 404.1527(d)(3) (2011) (ALJ should consider the degree to which a medical source presents relevant evidence to support an opinion, including medical signs and laboratory findings).

The ALJ also rejected Dr. Schwartz's opinion because Plaintiff himself contradicted it. (AR 24.). Although Dr. Schwartz opined that Plaintiff could not reach in front of him, at the ALJ hearing, Plaintiff testified he could reach use his left arm and extend it from his body. (AR 59.) He also testified that he could use his hands and shoulders to: lift 10 pounds (AR 194); drive his car for 1 hour (AR 194); carry his daughter to sit on his lap (AR 55); purchase groceries and bring them back home (AR 56); bathe himself and take care of personal hygiene (AR 61); prepare meals for his two children (AR 63); wash dishes (AR 63); and fold clothes (AR 64). The Court finds that this is also a legitimate reason for rejecting Dr. Schwartz's opinion. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of treating physician's report because "[Plaintiff] has never claimed to have any problems with many of the conditions and activities that [the doctor] instructed [Plaintiff] to avoid.").

As to Dr. Wahl's opinion, the Court finds that the ALJ's decision fails to fully explain how the opinion of a State agency medical consultant conducted in October 2010 constitutes substantial evidence for rejecting Plaintiff's treating physician's opinion from 2011 and 2012. "A treating physician's most recent medical reports are highly probative." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) (citing *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985) (finding that medical evaluations prepared months earlier were not substantial evidence sufficient to rebut

16

more recent conclusions by a treating physician)). "Where claimant's medical condition is progressively deteriorating, the most recent medical report is most probative." *Payan v. Chater*, 959 F. Supp. 1197, 1203 (C.D. Cal. 1996) (quoting *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986). Although it appears that Dr. Wahl's opinion is consistent with the medical evidence of record up to the date of his report, the ALJ does not address Dr. Wahl's opinion in relation to the subsequent medical evidence. As discussed above, the ALJ gave other specific and legitimate reasons that are supported by substantial evidence in the record to reject Dr. Schwartz's opinion. Accordingly, the Court need not determine if the ALJ erred in rejecting Dr. Schwarz's 2011 and 2012 opinions based on Dr. Wahl's 2010 opinion – substantial evidence otherwise supports the ALJ's decision, and the harmless error rule therefore applies. *Curry*, 925 F.2d at 1131.

Based on this analysis, the Court finds the ALJ's decision to reject Dr. Schwartz's opinion is supported by substantial evidence and applies the correct legal standards. Accordingly, the decision must be affirmed.

**B.     Plaintiff's Credibility**

Next, Plaintiff argues that ALJ erred in his assessment of Plaintiff's credibility. Pl.'s Mot. at 11-12. In his decision, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the medical evidence of record does not fully support the claimant's allegations of a complete inability to work." (AR 24.) The ALJ noted that Plaintiff testified "that he was fine with reaching in front of him" and "that he is able to care for his young daughter on a daily basis." (AR 24.) Plaintiff argues that the ALJ failed to explain why his testimony as to the severity of his pain and limitations should not be seen as fully credible. Pl.'s Mot. at 12.

In response, the Commissioner argues that the ALJ permissibly discounted Plaintiff's allegations because his daily activities contradict his testimony that his shoulder pain essentially renders his arms and hands immobile and prevent him from working. Def.'s Mot. at 8-9. The Commissioner further argues that Plaintiff's testimony is inconsistent with the objective evidence of record. *Id.* at 9.

17

1. Legal Standard

An ALJ must use a two-step analysis in determining whether a claimant's testimony about their subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, it must be determined "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). A claimant does not need to "'show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

Second, if the claimant has met the first step and there is no affirmative evidence of malingering, "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen*, 80 F.3d at 1281). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. "At the same time, the ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" *Molina*, 674 F.3d at 1112 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

In evaluating a claimant's testimony, the ALJ may use "ordinary techniques of credibility evaluation," such as "consider[ing] inconsistencies either in the claimant's testimony or between the testimony and the claimant's; "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"; and "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* (internal quotations and citations omitted). Thus, "[w]hile a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. *Id.* at 1112-13 (internal quotations and citations omitted). "Even where those activities suggest some difficulty

18

functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id.* at 1113 (internal quotations and citations omitted).

### 2.  Application to the Case at Bar

Here, the ALJ answered the first step in the analysis, finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 24.) He determined that "the medical evidence of record does not fully support the claimant's allegations of a complete inability to work." (AR 24.) This finding is supported by substantial evidence in the record. Although Plaintiff claims that he is unable to work because of pain in both his shoulders, the ALJ could reasonably conclude that Plaintiff's activities undermined his claim. These include lifting 10 pounds (AR 194); driving his car for 1 hour (AR 194); picking up his children from school (AR 47); carrying his daughter (AR 55); purchasing groceries and bringing them back home (AR 56); extending his left arm in front of his body (AR 59); bathing himself and taking care of personal hygiene (AR 61); preparing meals for his two children (AR 63); washing dishes (AR 63); and folding clothes (AR 64). These daily activities contradict his testimony that his shoulder pain prevents him from working. *Molina*, 674 F.3d at 1113 (finding that the plaintiff's daily activities, including walking her two grandchildren to and from school, attending church, shopping, and taking walks, undermined her claims that she was incapable of being around people without suffering from debilitating panic attacks).

The ALJ also rejected Plaintiff's testimony because it was inconsistent with the objective evidence, as discussed above. *Burch v. Barnhart*, 400 F.3d 677, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"); *see also Valentine v. Comm'r Social Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) ("The ALJ recognized that this evidence" of claimant's gardening and community activities "did not suggest [claimant] could return to his old job at Cummins, but she thought it did suggest that [claimant's] later claims about the severity of his limitations were exaggerated"). The vocational expert testified that given Plaintiff's limited

mobility of the right shoulder, but ability to use his left, he could still work as a booth cashier, parking lot attendant, and usher/ticket taker.  (AR 72-74.)

Because the ALJ's adverse credibility determination was supported by specific, clear, and convincing reasons, the Court must uphold it.

## CONCLUSION

For the reasons stated above, the Court hereby DENIES Plaintiff's Motion for Summary Judgment and GRANTS the Commissioner's Cross-Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: June 5, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge